Jeffrey J. Hepworth, ISB No. 3455
J. Grady Hepworth, ISB No. 10364
HEPWORTH LAW OFFICES
2229 W. State Street
P.O. Box 2815
Boise, ID 83702-2815
Telephone: (208) 333-0702
Facsimile: (208) 246-8655
courtservice@idalawyer.com
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MISTY D. Tucker, an individual<br><br>　　　　　　Plaintiff,<br><br>　vs.<br><br>NUTRIEN AG SOLUTIONS, INC., a Delaware Corporation registered and doing business in the State of Idaho; JOHN DOE CORPORATIONS I-V, unknown corporations or business entities,<br><br>　　　　　　Defendant.<br><br>　　　　　　Defendants. | Case No._____<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

COMES NOW, the Plaintiff, Misty D. Tucker ("Plaintiff" or "Tucker"), by and through her counsel of record, Hepworth Law Offices, for causes of action arising from the discrimination, disparate treatment, and wrongful termination Ms. Tucker experienced in the course of her employment with Nutrien Ag Solutions, Inc. ("Nutrien") (formerly known as Agrium/Crop Production Services, Inc.) Nutrien discriminated and wrongfully terminated Ms. Tucker in violation

**COMPLAINT AND DEMAND FOR JURY TRIAL**
 - 1

of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2 *et seq*. and the Idaho Human Rights Act, I.C. § 67-5909 *et seq.* Ms. Tucker seeks monetary damages for her lost wages and general damages for her emotional distress.

## I.   PARTIES, JURISDICTION, AND VENUE

1.    The Plaintiff, Misty Tucker, is a white female born in November 1987. Ms. Tucker is a United States citizen currently residing in Buhl, Idaho. Ms. Tucker graduated with an Associate degree in biology from the College of Southern Idaho, as well as a bachelor's degree in Agricultural Sciences from the University of Idaho.

2.    Defendant Nutrien Ag Solutions, Inc. ("Nutrien") (formerly known as Agrium/Crop Production Services, Inc. and referred to as "CPS") is a Delaware corporation registered and doing business in the State of Idaho, with a registered agent as C T Corporation System, 921 S. Orchard St. STE G. Boise, ID 83705. Nutrien is engaged in business in at least forty-eight states, including a facility in Wendell, Idaho ("Wendell Facility") where Ms. Tucker was employed.

3.    Defendant John Doe Corporations I-V are unknown corporations or other forms of business entities that may have directly or indirectly employed Misty Tucker and are liable for the acts of discrimination alleged herein, but whose identities and true names are not known at this time.

4.    This Court has jurisdiction pursuant to 28 U.S.C. § 1331. The Plaintiff asserts federal subject matter jurisdiction pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e-2 *et seq*.

5.    This Court has supplemental jurisdiction of the state law claims under the Idaho Human Rights Act, and tortious causes of action asserted herein pursuant to 23 U.S.C. § 1367.  The factual basis of the state law claims brought under the Idaho Human Rights Act and tortious conduct are identical to the operative facts underlying the federal claims.

**COMPLAINT AND DEMAND FOR JURY TRIAL**
 - 2

6.  Venue is proper pursuant to 28 U.S.C § 1391 and 42 U.S.C. § 2000e-5(f)(3). The United States District Court for the District of Idaho is the federal judicial district embracing the City of Wendell in Gooding County, Idaho, where the unlawful employment practices were committed, and where the employment records relevant to such practice are maintained and administered.

7.  Ms. Tucker filed a timely complaint with the Idaho Human Rights Commission ("IHRC") and the Equal Employment Opportunity Commission ("EEOC") on or about July 24, 2018. The IHRC and EEOC issued their Notice of Right to Sue on May 29, 2020. Less than ninety-days has elapsed since both agencies issued the Notices of Right to Sue, and Ms. Tucker has exhausted all administrative remedies under law.

## II. GENERAL ALLEGATIONS

8.  Ms. Tucker was hired by Nutrien (at the time Agrium/Crop Production Services) in November 2016 as a crop consultant, working at the Wendell Facility located at 564 S Idaho St. Wendell, ID 83355. Ms. Tucker's job duties included selling company products and services, maintaining a sales program within her assigned territory and accounts, and monitoring competitive activities and trends. Ms. Tucker was hired by Facility Manager Mac Brown.

9.  Upon information and belief, Ms. Tucker was the first female crop consultant ever hired by Mr. Brown. At the time of her employment, Ms. Tucker was the only female employee at the Wendell facility who was not an administrative assistant.

10. Ms. Tucker was hired at the same time as two other male employees. Ms. Tucker understood that the three new hires would be taking over consulting territories held by older male employees who were retiring. Whereas one of the new hires left for a different company not long after starting, Ms. Tucker trained with one of the male employees, Wyatt Andreasen. Ms. Tucker believes she and

Mr. Andreasen were hired for materially the same position, and thus had substantially equal skills, abilities, and responsibilities, and performed duties under similar working conditions within the same establishment. However, both individuals had noticeably different career trajectories as a result of the disparate opportunities given to them by Defendants.

11.     As she and Mr. Andreasen were training, Ms. Tucker began to be treated differently than her male counterpart. For example, in January 2017, both new hires were required to obtain a CDL license for their positions. However, only Mr. Andreasen was told to get his Class A license. Mr. Andreasen was also required to get forklift trained, whereas Ms. Tucker was specifically told not to. Ms. Tucker was also not fit tested for chemical safety gear, such as a respirator, even though Mr. Andreasen was told that the equipment was mandatory for all crop consultants. Ms. Tucker was also never given a key to the office, despite the fact all new hires had a key. To her knowledge, Ms. Tucker was the only employee who never received one. Ultimately Mr. Andreasen was given substantially greater training and mentorship by his male colleagues throughout the course of his career, including a "book of business" and prospective clients. Ms. Tucker was never offered any mentorship or career opportunities because of her gender.

12.     Ms. Tucker also observed prejudice against women in the workplace. For example, one of the managers, Jeremy, refused to talk to or respond to Ms. Tucker's emails for nearly the duration of her employment at CPS. Ms. Tucker also observed another manager, Chris Smith, refuse to work with a female consultant from Dow Chemical Company simply on the basis of her gender. When Mr. Smith was asked by Mr. Brown why he would not work with the Dow Chemical employee, Mr. Smith replied, "she would prefer me pussy-whipped." Other employees followed Mr. Smith's sexist lead. Ms. Tucker remembers Mr. Smith was struggling to replace a microwave at work, and one of the co-

**COMPLAINT AND DEMAND FOR JURY TRIAL**
- 4

workers made fun of him by saying "hey, your skirt is showing." Whereas Ms. Tucker tried to ignore the derogatory comments of her older, male colleagues, they are nonetheless indicative of how the company treated their only female crop consultant.

13. Within months of being hired, Ms. Tucker and her husband became pregnant with their second child. Ms. Tucker continued training and working towards getting acclimated in her new job, including attending the winter sales meeting.

14. In approximately April 2017, Ms. Tucker had complications with her pregnancy, which caused her to have trouble walking. Because of the complications, Ms. Tucker had to go on short-term disability leave that month. Ms. Tucker had her second child who was born on May 26, 2017, and Ms. Tucker returned to work on August 1, 2017.

15. However, upon returning to work with full medical clearance, Ms. Tucker found that Defendant refused to give her the same opportunities as her male colleagues. Whereas a major portion of most crop consultant's roles is done while making sales calls and spending time managing accounts in the field, Defendant asked Ms. Tucker to focus on implementing a new software that the company was rolling out. Ms. Tucker gladly complied, as she had experience with similar programs through her formal education and her previous job experience with other companies.

16. Ms. Tucker understood the implementation of the software was in the course and scope of her duties as a crop consultant, and Ms. Tucker was never approached about changing her position title or her core duties.

17. Ms. Tucker continued to complete sales calls, specifically by cold-calling account leads in her territory. Crop Consultants are entitled to commissions and/or bonuses based on sales and accounts opened. In an effort to make more sales, she began cold-calling more prospective clients,

and performing other client outreach.

18. Ms. Tucker filed multiple verbal complaints with Mac Brown regarding the adverse treatment she was experiencing. Ms. Tucker complained about male colleagues, such as Chris Smith, avoiding her emails and calls. Ms. Tucker requested that Mr. Brown assist in job shadow training with other employees (as he had for male colleagues), which he refused to do.

19. As a result of Defendant's gender bias, or as retaliation for Ms. Tucker's complaints about disparate treatment, Ms. Tucker was also told she could not attend the CPS winter sales meeting in 2018.

20. Ms. Tucker was also excluded from many company or after-work social events. The male employees in the company would often get drinks after work or go to lunch together. CPS employees hosted a family fish smoke BBQ, in which many of the male employees invited their spouses, but Ms. Tucker was not invited.

21. Unexpectedly, Ms. Tucker was given a Termination letter dated April 6, 2018. Whereas the letter did not provide a reason for the termination, Ms. Tucker followed up with Mr. Brown as to why she was being fired. Mr. Brown's only response was "I have no use for you." Ms. Tucker pressed him and mentioned that she had her CDL and that she knew there was a position open as a driver, but Mr. Brown told her that the decision was final. Mr. Brown refused to consider Ms. Tucker for other positions that she was preeminently qualified for because of her gender.

22. Upon information and belief, Ms. Tucker's crop consultant position was later filled by a male employee.

23. Ms. Tucker alleges that her termination was motivated by bias and discrimination because of her gender as the only female crop consultant, and as result of the disparate treatment she received

during the course of her employment.

### III. CAUSES OF ACTION

*COUNT ONE:*

*DISCRIMINATION AND DISPARATE TREATMENT IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT*

24. Plaintiff realleges and incorporates by reference all paragraphs set forth above.

25. Plaintiff, a female, is a member of a protected class under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2 *et seq*.

26. Ms. Tucker was highly qualified to perform the duties of a crop consultant throughout the duration of her employment with Defendant.

27. Ms. Tucker was subjected to numerous adverse employment actions because of her gender as a female employee. Ms. Tucker endured verbal disparagement and sexist comments exhibiting bias and animus towards female professionals.

28. Ms. Tucker received disparate treatment throughout her employment, particularly in light of the objectively favorable treatment received by directly comparable male employees. Ms. Tucker received inferior training, inferior job opportunities, and was subject to disparate discipline and pretextual criticism.

29. Defendants' pretextual criticism of Ms. Tucker was based upon sexist and gendered stereotypes, and not consistent with bonafide occupational qualifications or performance and merit.

30. Defendants refused to consider Ms. Tucker for other open positions in the company because of her gender, despite her qualifications.

31. As a result of Defendant's discrimination and disparate treatment, Ms. Tucker suffered substantial damages, including past and future lost wages, loss of earning capacity, lost retirement

and insurance benefits, lost healthcare and child support benefits, and general damages of pain, suffering, emotional distress, and loss of enjoyment of life.

## COUNT TWO:

### VIOLATION OF I.C. § 67-5909 et seq. ("IHRA")

32. Ms. Tucker realleges and incorporates by reference all paragraphs set forth above.

33. The IHRA prohibits employers from discriminating because of gender. Ms. Tucker was among a protected class as a minority of female employees, and the only female crop consultant.

34. Ms. Tucker was subjected to numerous adverse employment actions because of her gender as a female employee. Ms. Tucker endured verbal disparagement and sexist comments exhibiting bias and animus towards female professionals.

35. Ms. Tucker received disparate treatment throughout her employment, particularly in light of the objectively favorable treatment received by directly comparable male employees. Ms. Tucker received inferior training, inferior job opportunities, and was subject to disparate discipline and pretextual criticism.

36. Defendants' pretextual criticism of Ms. Tucker was based in sexist and gendered stereotypes.

37. Defendants refused to consider Ms. Tucker for other open positions in the company because of her gender.

38. As a result of Defendant's discrimination and disparate treatment, Ms. Tucker suffered substantial damages, including past and future lost wages, loss of earning capacity, lost retirement and insurance benefits, lost healthcare and child support benefits, and general damages of pain, suffering, emotional distress, and loss of enjoyment of life.

## IV. ATTORNEY'S FEES

39. As a result of the wrongful conduct of Defendants, as alleged above, Misty Tucker has been reasonably required to hire the law firm of Hepworth Law Offices to prosecute this action. Pursuant to I.C. 12–120(3), I.C. 12-121, 42 U.S.C. § 2000e-5(k), 42 U.S.C. § 1988, and Fed. R. Civ. P. 54(d)–(e), Ms. Tucker is entitled to a reasonable award of costs and attorney's fees. A reasonable attorney's fee rate is $400.00 per hour for all time worked.

## V. DEMAND FOR TRIAL BY JURY

40. Ms. Tucker demands a trial by jury pursuant to Fed. R. of Civ. P. 38, U.S. Const. Amendment VII, and Idaho Const. art. I, § 7 for all claims and all issues related to liability and damages.

## VI. PRAYER FOR RELIEF

WHEREFORE, Misty Tucker respectfully prays for judgment against Nutrien Ag Solutions, Inc. as follows:

A. For money judgment as compensation for all past and future lost income, liquidated damages, and other special and general damages sustained by Ms. Tucker which will be proven at trial, but which damages will be substantial and more than $75,000.00;

B. Reasonable value of all lost employment benefits, child care and medical benefits, as well as retirement benefits;

C. For reinstatement to her previous position or an equivalent, or in lieu of reinstatement, future lost wages in an amount to be proven at trial;

D. For all reasonable court costs, expert fees, and attorney fees incurred by the Plaintiff in prosecution of the present action pursuant to Federal law and the laws of the State of Idaho;

**COMPLAINT AND DEMAND FOR JURY TRIAL - 9**

E.  Monetary compensation for any additional tax liability incurred because of lump-sum judgment or other remuneration recovered;

F.  Pre-and/or post-judgment interest pursuant to 28 U.S.C. § 1961 and I.C. § 28-22-104;

G.  For such other and further relief as the Court deems just and equitable.

DATED this 20th Day of August, 2020

                HEPWORTH LAW OFFICES

                /s/ *J. Grady Hepworth*
                Jeffrey J. Hepworth, ISB No. 3455
                J. Grady Hepworth, ISB No. 10364
                *Attorneys for Plaintiff*

**COMPLAINT AND DEMAND FOR JURY TRIAL**
 **- 10**